UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-cr-20050-JES-DGB |
| ) | |
| JULIANO MELGAREJO, ) | |
| ) | |
| Defendant. ) | |

# ORDER AND OPINION

This matter is now before the Court on Defendant Melgarejo's Motion (Doc. 34) and Amended Motion (Doc. 36) for Compassionate Release, the United States' Response (Doc. 38), and Defendant's Reply (Doc. 39). For the reasons that follow, the Motions (Docs. 34, 36) are DENIED.

## BACKGROUND

On November 20, 2013, Defendant was sentenced to 120 months of imprisonment for two counts of distributing 100 grams or more of heroin. He is serving his sentence at FCI Oxford in Oxford, Wisconsin. In light of the ongoing COVID-19 pandemic, Defendant moves for an order reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), often referred to as the compassionate release statute. The United States seeks dismissal of Defendant's motion for failure to exhaust administrative remedies and opposes the request on the merits. Doc. 38.

**COVID-19 Background**

COVID-19 is a new "respiratory disease spreading from person to person." Situation Summary, Ctrs. for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html#background (last

1

updated Apr. 19, 2020). The current global pandemic of COVID-19 "poses a serious public health risk." *Id.* "COVID-19 can cause mild to severe illness" with the "most severe illness occur[ing] in adults 65 years and older and people of any age with serious underlying medical problems." *Id.*

**Defendant's Health**

Defendant is 36 years old and suffers from hypertension.

**COVID-19 in the Bureau of Prisons**

The CDC has recognized that correctional facilities face unique challenges in controlling the spread of COVID-19. Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Apr. 30, 2020). For instance, because incarcerated "persons live, work, eat, study, and recreate within congregate environments," there is a heightened "potential for COVID-19 to spread once introduced." *Id.* Recognizing this, the Bureau of Prisons ("BOP") has modified operations in all facilities, by, for example, suspending social and legal visits, limiting internal movement of inmates, suspending staff travel, and screening staff and inmates. BOP Implementing Modified Operations, BOP, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Apr. 30, 2020).

Notwithstanding these efforts, inmates and staff at various BOP institutions have tested positive for COVID-19. At FCI Oxford, Defendant's institution, there are currently no inmates or staff who have tested positive for COVID-19. *See* COVID-19 Coronavirus, BOP, https://www.bop.gov/coronavirus/ (last visited May 12, 2020) (scroll down to the COVID-19 Cases section, then click on "Full breakdown and additional details").

**LEGAL STANDARD**

"[A] judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment" that can be modified in only certain enumerated circumstances. 18 U.S.C. § 3582(b). As relevant here:

> [a] court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable if it finds that (i) extraordinary and compelling reasons warrant such a reduction

and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *cf. United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

**DISCUSSION**

Defendant contends that he should be released pursuant to § 3582(c)(1)(A)(i) because his hypertension makes him uniquely at risk during the COVID-19 pandemic. Doc. 36, at 2.

**Exhaustion**

Section 3582(c)(1)(A) contains an exhaustion requirement: before a defendant can bring his own motion, he must ask the warden of his facility to bring such a motion. If thirty days pass without a response, he can file a motion in court. *Id.* If, before that time, the BOP declines to bring such a motion, he must fully exhaust all administrative appeals before filing a motion in court himself. *Id.*

The United States argues Defendant has not sought to exhaust his administrative remedies before filing the instant Motion. Doc. 38, at 21. The United States argues that the compassionate release statute's exhaustion requirement is mandatory and the Court cannot not waive it. *Id*. In his Reply, Defendant argues the exhaustion requirement may be excused and should be excused here given the danger of contracting COVID-19. Doc. 39, at 5–6.

Courts around the country are struggling with the issue of whether the exhaustion requirement is waivable. *Compare, e.g.*, *United States v. Perez*, No. 17 Cr. 513-3(AT), 2020 WL 1546422, at *2–3 (S.D.N.Y. Apr. 1, 2020) (finding that exhaustion requirement is waivable), *with, e.g.*, *United States v. Brown*, No. 12-20066-37-KHV, 2020 WL 1935053, at *1–2 (D. Kan. Apr. 22, 2020) (finding that the exhaustion requirement is jurisdictional and not waivable). Here, Defendant has failed to even attempt to exhaust his administrative remedies. Moreover, although the fear of contracting COVID-19 is a legitimate concern, Defendant is not currently housed in a correctional institution suffering from a COVID-19 outbreak. Thus, Defendant's failure to exhaust his administrative remedies should not be excused here.

**Merits**

Even if the Court were to excuse Defendant's failure to exhaust, it would not grant his request for compassionate release. Defendant argues that he has shown that extraordinary and compelling reasons warrant his release because there is a high risk of prisoners generally being infected with COVID-19 at BOP facilities. The United States argues that Defendant's hypertension is not extraordinary and compelling and does not justify release. Doc. 38 at 29.

The compassionate release statute directs the Court to make three considerations: 1) whether extraordinary and compelling reasons warrant a sentence reduction; 2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and 3) whether a reduction

would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Court finds that Defendant has not shown that compelling reasons warrant a sentence reduction in his case.

The Sentencing Guideline's policy statement defines what constitutes extraordinary and compelling reasons that warrant a sentence reduction. *See* U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018).[1] Application notes explain that the medical condition of the defendant (i.e., if he suffers from a terminal illness or a serious physical or medical condition that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"), his age (i.e., if he is 65 and declining in health and has served a large portion of his sentence already), or his family circumstance (i.e., if the caregiver for his minor children dies or becomes incapacitated) can constitute extraordinary and compelling reasons warranting release. *Id.* § 1B1.13 cmt. n.1(A)–(C).

The Court does not seek to minimize the risks that COVID-19 poses to inmates in the BOP. But the mere presence of COVID-19 in a particular prison (or in the BOP generally) cannot justify compassionate release—if it could, every inmate in that prison could obtain release. Perhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections,

---

[1] Previously § 3582(c)(1)(A) allowed only the BOP to bring a motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 2, 2002 through Dec. 20, 2018). The Sentencing Commission has not updated its policy statement to reflect that a defendant can make his own motion for a sentencing reduction. Some courts have held that this means there is currently no policy statement with which sentencing reductions under § 3582(c)(1)(A) must be consistent. *See, e.g.*, *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020). Here, regardless of whether the policy statement applies, the Court does not believe Defendant has met his burden of showing extraordinary or compelling reasons warrant a sentence reduction.

the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus. However, that hypothetical is far from the situation here.

Courts around the country have granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19. *See, e.g.*, *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Bess*, No. 16-cr-156, 2020 WL 1940809, at *8 (W.D.N.Y. Apr. 22, 2020) (congestive heart failure, coronary artery disease, diabetes, and hypertension); *United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (diabetes, hypertension, and obesity); *United States v. Williams*, No. 3:04cr95/MCR, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020) (coronary disease, peripheral vascular disease, congestive heart failure, end-stage renal disease, hyperlipidemia, and prediabetes); *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2–3 (E.D. Wash. Mar. 31, 2020) (chronic obstructive pulmonary disease and significant emphysema). Courts have also granted compassionate release where the defendant is immunocompromised. *See, e.g.*, *United States v. Robinson*, No. 18-cr-00597-RS-1, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020) (defendant was taking immunosuppressants); *United States v. Edwards*, No. 6:17-cr-00003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020) (defendant was immunocompromised due to brain cancer, chemotherapy, and steroid prescription); *United States v. Campagna*, No. 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) (defendant suffered "from a compromised immune system with very low white blood cell counts" (quotation marks omitted)).

6

Here, Defendant has not met his burden to establish that extraordinary and compelling reasons justify his release from prison. Although hypertension is a risk factor for COVID-19 complications, Defendant does not allege that his condition is particularly severe or not controlled with medication. In fact, the medical records submitted by Defendant with his Reply show that he regularly refuses to take his hypertension medication. *See* Doc. 40. The Court could find no cases where a defendant with hypertension and no comorbidities was granted relief under the compassionate release statute. Moreover, as noted above, there does not appear to be any reported cases of COVID-19 at Defendant's place of incarceration. Accordingly, the Court denies Defendant's request for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).

## CONCLUSION

For the reasons set forth above, Defendant Melgarejo's Motion (Doc. 34) and Amended Motion (Doc. 36) for Compassionate Release are DENIED.

Signed on this 12th day of May, 2020.

s/ James E. Shadid
James E. Shadid
United States District Judge